UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No. 24-10780-RGS

ALFRED TRENKLER,
Petitioner

v.

WARDEN DAVID RICH,
Respondent.

MEMORANDUM AND ORDER ON RESPONDENT'S MOTION
TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

September 9, 2024

STEARNS, D.J.

Alfred Trenkler petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt # 1. Respondent Warden Freddie Bowers[1] moves to dismiss the Petition. Dkt # 10. For the following reasons, the motion to dismiss the Petition will be allowed.

---

[1] Trenkler's petition was filed in the Eastern District of North Carolina, where Trenkler was incarcerated at FCI Butner. *See* Dkt # 1. The petition named David Rich, the Warden at FCI Butner, as respondent, who filed the motion to dismiss. *Id.*; Dkt # 10. Trenkler was subsequently transferred to FMC Devens in Massachusetts. On March 15, 2024, the case was transferred into this District, and, on May 6, 2024, Warden Bowers was substituted as the respondent in this case. Dkt # 14, # 31. The court acknowledges the assistance of Magistrate Judge Boal and her session clerks in preparing the case for transmittal and submission to this session.

BACKGROUND

Trenkler is currently serving a 41-year sentence[2] for "convictions stemming from his role in an October 28, 1991 bombing in Roslindale, Massachusetts that killed one Boston Police Department Bomb Squad officer and maimed a second officer." *United States v. Trenkler*, 537 F. Supp. 3d 91, 93 (D. Mass. 2021). On November 29, 1993, a jury convicted Trenkler of illegal receipt and use of explosive materials and attempted malicious destruction of property by means of explosives, in violation of 18 U.S.C. §§ 844(d) & (i), and conspiracy, in violation of 18 U.S.C. § 371. *Id.* Trenkler's projected release date is May 7, 2028. Dkt # 11 at 3.

On April 3, 2023, Trenkler requested transfer to home confinement under the Elderly Offender Pilot Program (EOPP), 34 U.S.C. § 60541(g). The EOPP (which has since been discontinued) allowed the BOP to transfer qualifying elderly offenders to home confinement prior to their scheduled eligibility date for release. On June 14, 2023, the Respondent denied

---

[2] Trenkler was originally sentenced to concurrent terms of life imprisonment on Counts 2 and 3 (receipt of explosive materials and attempted malicious destruction of property by means of explosives), as well as a concurrent term of 60 months on Count 1 (conspiracy). *Trenkler*, 537 F. Supp. 3d at 94. On February 28, 2023, Trenkler's sentence was reduced to a term of 41 years for the reasons explained by Judge Smith in *United States v. Trenkler*, 658 F. Supp. 3d 7, 10 (D. Mass. 2023).

Trenkler's transfer request because his "current offense is considered a Crime of Violence, as listed in the Bureau of Prisons Program Statement 5162.05, *Categorization of Offenses*," and therefore did not satisfy an EOPP criterion. Dkt #1-1 at 1.

Trenkler appealed the Warden's denial to the Regional Director who, on October 4, 2023, denied the appeal, citing the same reason for Trenkler's ineligibility as given by the Warden. *See id.* at 1. On October 26, 2023, Trenkler appealed to the General Counsel who, on November 9, 2023, denied the appeal, again relying on the BOP's Program Statement 5162.05.[3]

---

[3] As stated by the General Counsel's Central Office:

> We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. You were reviewed for home confinement and deemed ineligible for placement at this time. You were advised of the reason for this decision, which outlined that your conviction for 18 U.S.C. § 844(d), Receipt of Explosive Materials, and 18 U.S.C. § 844(i), Attempted Malicious Destruction of Property with Explosives are a [sic] crimes of violence under Program Statement 5162.05, Categorization of Offenses. Specifically, Program Statement 5162.05 lists as precluding offenses convictions under 18 U.S.C. § 844 and offenses that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device) or by its nature or conduct, presents a serious potential risk of physical force against the person or property of another."

On December 17, 2023, Trenkler filed this Petition in the Eastern District of North Carolina, where he was then incarcerated. *See* Dkt # 1. The case was assigned to this session on March 26, 2024. *See* Dkt # 15.

## DISCUSSION

The EOPP, as enacted, provided that "the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention . . . ." 34 U.S.C. § 60541(g)(1)(B). While Congress "vested the executive branch, not the judicial branch, with the power to decide which prisoners may participate in the" EOPP, *Melot v. Bergami*, 970 F.3d 596, 600 (5th Cir. 2020), it "limited some of the BOP's discretion by establishing minimum statutory eligibility criteria for participation in the [EOPP]," *Winkelman v. Warden*, 2023 WL 6283111, at *2 (D.N.H. Sept. 25, 2023). As is relevant here, Congress restricted the definition of an "eligible elderly offender," as among other criteria, to an inmate:

> (ii)   who is serving a term of imprisonment that is not life imprisonment based on a conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in

---

Dkt # 34-6 at 1.

> section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served 2/3 of the term of imprisonment to which the offender was sentenced;
>
> (iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii); . . . .

34 U.S.C. § 60451(g)(5)(A).

That said, the BOP has the final say. Even "if an inmate meets all of the statutory eligibility criteria, 'the Bureau "may" but also may not, grant early release.'" *Winkelman*, 2023 WL 628311, at *2, quoting *Lopez v. Davis*, 531 U.S. 230, 239 (2001) (emphasis in original).

Although there was some initial sparring between the parties on the authority of the court to judicially review the BOP's decision, as the Petitioner notes, the government, albeit not wholly conceding the issue, no longer presses the issue nor does it rely on the expiration of the EOPP as a bar to relief. Although the government cites the rulings of numerous district courts that have held that this court does not have the discretion to grant the relief requested by Trenkler (early release to home confinement), the government appears willing for present purposes to rely on its contention that Trenkler's conviction for violation of 18 U.S.C. §§ 844(d) and (i) is a crime of violence as defined by Congress in Section 16 of Title 18 of the United States Code (defining a crime of violence as "an offense that has as an

element the use, attempted use, or threatened use of physical force against the person or property of another").

Directly relevant to the issue presented to this court, the parties agree that, in parsing the meaning of a "crime of violence," the court is to apply what the Supreme Court has termed a "categorical approach." *See United States v. Taylor*, 596 U.S. 845, 850 (2022). Under the Supreme Court's categorical approach, the court is precluded from inquiring into how Trenkler committed the crime. *Id.*[4] Rather, "[t]he only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id*.

To convict a defendant under Section 844(d), the government must prove that the defendant "(1) transported or received in interstate commerce (2) any explosive (3) with the knowledge or intent that it would be used to kill, injure, or intimidate any individual' or damage any property." *United States v. Linehan*, 56 F.4th 693, 699 (9th Cir. 2022) (internal citation omitted). When deciding *Linehan*, the Ninth Circuit became the first federal

---

[4] As might be expected, because of its rigidities and often incoherent results, the categorical approach has more critics than fans. *See e.g.* Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of the Armed Career Criminal Act and Mandatory Minimum Sentencing*, 133 Harv. L. Rev. 200 (2019).

6

circuit court to address the issue, holding that Section 844(d) is unquestionably a crime of violence. *Id.* at 704.[5] In so doing, the Ninth Circuit "conclude[d] that at the very least, [Section 844(d)] requires the attempted use of [physical] force." *Id.* at 701. The Court applied the "traditional meaning of 'attempt' as requiring an individual to engage in conduct that reflects a 'substantial step' toward the wrongful end." *Id.* at 702 (internal citation omitted).

The Ninth Circuit explained that Section 844(d) "treats as a completed offense the transportation or receipt in commerce of 'any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any' property." *Id.* In other words, the "explosive need not be detonated or cause harm; what is criminalized is the conveyance of the explosive in commerce with the knowledge or intent that it will be used for harmful purposes." *Id.* Accordingly, the Ninth Circuit concluded that Section 844(d) requires "the attempted use of physical force" because it necessarily involves "transporting

---

[5] While *Linehan* involved the soliciting statute, 18 U.S.C. § 373(a), the Ninth Circuit began its analysis by noting that the language used in Section 373 is "substantially similar to other 'crime of violence' . . . provisions found elsewhere in the criminal code," including 18 U.S.C. § 16(a). *Id.* at 699. The Ninth Circuit applied the "categorical approach" to determine whether Section 844(a) has "as an element the use, attempted use, or threatened use of physical force." *Id.* at 698-699.

or receiving an explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any person, or damage property," which "is categorically a substantial step toward the use of violent force." *Id.; see also id.* at 704 ("Thus, we conclude that a violation of § 844(d) requires the defendant to have undertaken a substantial step toward the use of violent force."). After all, an "explosion is inherently violent, capable of causing death or serious injury to persons and serious damage to property. . . . Transporting or receiving an explosive brings it closer to its contemplated or potential detonation." *Id.* at 702-703. And one who "transports or receives the explosive," with "knowledge or intent to intimidate . . . involves the attempted use of force as well." *Id.* at 703. Therefore, to "violate § 844(d), one must thus at a minimum intend to intimidate by deploying a readied explosive capable of causing death, injury, or damage to property." *Id.*; *see also United States v. Norton*, 808 F.2d 908, 909 (1st Cir. 1987) (explaining that Section 844(d) involves an "element of intent to injure, or to affect future conduct, or to cause some other sort of relatively serious harm").

Trenkler has not cited, and this court has not found, any cases holding that Section 844(d) is anything but a crime of violence. Rather, Trenkler points to cases regarding the arson statute, 18 U.S.C. § 844(i). *See* Dkt # 42 at 2-4; s*ee also United States v. Tsarnaev*, 968 F.3d 24, 101-103 (1st Cir.

2020), *rev'd on other grounds*, 595 U.S. 302 (2022) (holding that Section 844(i) is not a crime of violence). The arson statute cases reason that Section 844(i) is not categorically a crime of violence because one can plausibly imagine a defendant damaging his or her *own* property (arson for illicit insurance gains is not an unknown crime). According to Trenkler, "there is no basis to reach a different result under § 844(d), because the textual overbreadth – the 'any' property clause – appears identically in both subsections." Dkt # 42 at 3.

It is a head-spinning task, but a mental scenario can be contrived in which a defendant acquires or attempts to acquire explosives for the express purpose of obliterating himself or his own property, or as imagined in *Linehan*, 56 F.4th at 704, succeeds in executing the scheme without any attempted use of force – tortured hypotheticals are after all catnip for the legal imagination. The government, however, aptly recites the First Circuit's cautionary tethering of the application of the categorial approach to reality in *United States v. Williams*, 80 F.4th 85, 90 (1st Cir. 2023) (the categorical approach requires considering "whether the least serious conduct for which there is a 'realistic possibility' of a charge and conviction necessarily involves the use of violent force"). Section 844(d) has an intent requirement that Section 844(i) does not: to violate Section 844(d), a defendant must "at a

9

minimum intend to intimidate by deploying a readied explosive capable of causing death, injury, or damage to property." *Linehan*, 56 F.4th at 703; *see also Tsarnaev*, 968 F.3d at 102 ("[N]owhere in § 844(i) does there appear an intent element."). "This level of intimidation connotes violent force—or, in Justice Breyer's words, force 'likely to cause . . . significant public harm.'" *Linehan*, 56 F.4th at 703, quoting *United States v. Norton*, 808 F.2d 908, 909 (1st Cir. 1987). "'[F]orce capable of causing physical pain or injury' under the elements clause 'does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury, only potentiality.'" *Id.,* quoting *Stokeling v. United States*, 586 U.S. 73, 84 (2019). "Taking all these points together, the person who violates § 844(d) categorically takes a substantial step toward using 'force capable of causing physical pain or injury to another person." *Id.,* quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Given the soundness of the *Linehan* decision and its commonsense reasoning, this court agrees that Section 844(d) defines a crime of violence as Congress intended it, and that Trenkler is therefore ineligible for release.[6]

---

[6] The court's conclusion that Section 844(d) is a crime of violence within the meaning of Section 16(a) renders moot the dispute over whether BOP improperly relied on its Program Statement's definition in denying Trenkler's Petition.

ORDER

For the foregoing reasons, this court grants the Respondent's motion to dismiss the Petition. The Clerk will enter judgment for the Respondent and close the case.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE